**BREMERTON–TACOMA STAGES, Inc. v. SQUIRE, Collector of Internal Revenue.**

No. 1288.

United States District Court, W. D. Washington, S. D.

Jan. 29, 1951.

and directors, have not in any way aided, abetted or given encouragement or comfort to any person or persons or Government in rebellion against the Government of the United States.

Reuben C. Carlson and John J. Reha, Jr., Tacoma, Wash., for plaintiff.

Thomas R. Winter, Asst. U. S. Atty., Seattle, Wash. and James P. Garland, Office of The Atty. Gen., Washington, D. C., for defendant.

LEAVY, District Judge.

The above entitled cause came on regularly for trial on the 5th day of December, 1950, before the Court sitting without a jury, no jury having been requested, Reuben C. Carlson and John J. Reha, Jr., appearing for the plaintiff, and Thomas R. Winter, Assistant United States Attorney, Seattle, Washington, and James P. Garland, Office of The Attorney General, Washington, D. C., appearing for the defendant; and the evidence both oral and documentary having been introduced and the cause submitted for decision, the Court now makes its findings of fact as follows:

### Findings of Fact.

#### I.

That the plaintiff is, and at all times herein mentioned was, a corporation organized and existing under and by virtue of the laws of the State of Washington, with its principal office and principal place of business at 215 First Street, Bremerton, Washington.

#### II.

That the defendant, Clark Squire, was appointed Collector of Internal Revenue on the 6th day of March, 1941, for the District of Washington, and at all times since has been and is now such collector; and that the said Clark Squire, at all times since has been and is now a resident of the above entitled District, and maintains an office therein.

#### III.

That the plaintiff herein, its officers and directors, have shown true faith and allegiance to the Government of the United States, and that the plaintiff, its officers

#### IV.

That in the year 1943, the plaintiff filed income and excess profits tax returns, copies of which are attached to the Complaint marked Exhibits "A" and "B," and that the same had been timely filed with the Collector of Internal Revenue at Tacoma, Washington; that said original returns, as filed for the year 1943, reflected an income tax assessment of Two Thousand Five Hundred Twenty-One and 57/100 Dollars ($2,521.57) and an excess profits tax assessment of Sixty-Seven Thousand Six Hundred Ninety-Five and 38/100 Dollars ($67,695.38), which amounts plaintiff timely paid. That an examination of plaintiff's 1943 income tax returns was made by the Revenue Agent in Charge, Seattle, Washington; that a deficiency in excess profits tax in the amount of Thirteen Thousand Sixty-Five and 77/100 Dollars ($13,065.77) and an overpayment of income tax in the amount of Thirty-Six and 46/100 Dollars ($36.46) were established, as a result of this examination and subsequent conferences with representatives of the Treasury Department; that Exhibit "C," attached to the Complaint, is a copy of said Revenue Agent's Revised Conference Report; that as a result of this Report Seven Thousand One Hundred Fifteen Dollars ($7,115), which represented the amount in the Navy Prepayment Account, was included as income to plaintiff in 1943; that plaintiff took exception and protested said adjustment; that plaintiff paid additional tax, with interest, to the Collector of Internal Revenue on September 29, 1947, as follows:

| Excess Profits Tax | Income Tax | Interest |
|---|---|---|
| $13,065.77 | ($36.46) | $2,778.09 |

that plaintiff overpaid interest on the above deficiency in the amount of Three Hundred Two and 86/100 Dollars ($302.86), which amount was subsequently refunded to the plaintiff. That on January 28, 1948, the plaintiff filed a Claim For Refund for the

year 1943 in the amount of Five Thousand Six Hundred Ninety-Two Dollars ($5,692), a copy of which Claim is attached to the Complaint marked Exhibit "D". That on July 20, 1949, plaintiff received a Notice of Rejection of said Claim, a copy of which Notice is attached to the Complaint marked Exhibit "E".

### V.

That income tax and excess profits tax returns of plaintiff for the year 1944, copies of which are attached to the Complaint and marked Exhibits "F" and "G," had been timely filed with the Collector of Internal Revenue, Tacoma, Washington; that said original returns, as filed for the year 1944, reflected an income tax assessment of Four Thousand Seven Hundred Twenty-Seven and 89/100 Dollars ($4,727.89), and an excess profits tax assessment of Forty-Five Thousand Nine Hundred Thirty-Five and 89/100 Dollars ($45,935.89), which amounts plaintiff timely paid. That an examination of plaintiff's 1944 tax returns, as filed, was made by the Revenue Agent in Charge, Seattle, Washington; that a deficiency in excess profits tax in the amount of Sixteen Thousand Nine Hundred Forty-Five and 18/100 Dollars ($16,945.18), and an overpayment of income tax in the amount of Twenty-Five and 39/100 Dollars ($25.39) were established as a result of this examination and subsequent conferences with representatives of the Treasury Department; that Exhibit "C," attached to the Complaint, is a copy of said Revenue Agent's Revised Conference Report. That the original Revenue Agent's Report, a copy of which is attached to the Complaint marked Exhibit "H," added to the income of plaintiff the sum of Eight Thousand Fifty and 80/100 Dollars ($8,050.80), representing an amount in Navy Prepayment Account, and Four Thousand Two Hundred Eighteen and 75/100 Dollars ($4,218.75), representing advanced purchases by customers other than the Navy; that the Revised Revenue Agent's Report added an additional Six Thousand One Hundred Ninety-Two and 05/100 Dollars ($6,192.05) to income of the plaintiff, representing an additional amount in the Navy Prepayment Account. That plaintiff took exception and protested said adjustments; that plaintiff paid additional tax, with interest, to the Collector of Internal Revenue on September 29, 1947, as follows:

| Excess Profits Tax | Income Tax | Interest |
|---|---|---|
| $16,945.18 | ($25.39) | $2,586.34 |

That the plaintiff overpaid interest on the above deficiency in the amount of Two and 78/100 Dollars ($2.78), which amount was subsequently refunded. That on January 28, 1948, the plaintiff filed with the defendant a Claim for Refund in the amount of Fourteen Thousand Five Hundred Thirty-Two and 93/100 Dollars ($14,-532.93), a copy of which Claim is attached to the Complaint marked Exhibit "I"; that on July 20, 1949, the plaintiff received a Notice of Rejection of said Claim, a copy of which is attached to the Complaint marked Exhibit "J."

### VI.

That income tax and excess profits tax returns of plaintiff for the year 1945, copies of which are attached to the Complaint and marked Exhibits "K" and "L," had been timely filed with the Collector of Internal Revenue, Tacoma, Washington; that said original returns, as filed for the year 1945, reflected an income tax assessment of Four Thousand Eight Hundred Sixteen and 91/100 Dollars ($4,816.91) and an excess profits tax assessment of Fifty-Three Thousand Nine Hundred Ninety-Four and 82/100 Dollars ($53,994.82), which amounts plaintiff timely paid. That an examination of plaintiff's 1945 tax returns, as filed, was made by the Revenue Agent in Charge, Seattle, Washington; that a deficiency in excess profits tax in the amount of Twelve Thousand Four Hundred Seven and 76/100 Dollars ($12,407.76) and a deficiency in income tax in the amount of Eighty-Four and 13/100 Dollars ($84.13) were established as a result of this examination and subsequent conferences with representatives of the Treasury Department; that Exhibit "C," attached to the Complaint, is a copy of said Revenue Agent's Revised Conference Report. That the original Revenue Agent's Report, a copy of which is attached to the Complaint marked Exhibit "M," added to the income of plaintiff the sum of Three Thousand Four Hundred Sixty-One

and 20/100 Dollars ($3,461.20), representing an amount in Navy Prepayment Account, and Six Thousand Eighty-Nine and 83/100 Dollars ($6,089.83), representing advanced purchases by customers other than the Navy; that the Revised Revenue Agent's Report resulted in a reduction of net income of the plaintiff in the amount of Two Thousand Seven Hundred Sixteen and 20/100 Dollars ($2,716.20). That plaintiff took exception and protested said adjustments; that plaintiff paid additional tax, with interest, to the Collector of Internal Revenue on September 29, 1948, as follows:

| Excess Profits Tax | Income Tax | Interest |
| --- | --- | --- |
| $12,407.76 | $84.13 | $1,157.12 |

That the plaintiff overpaid interest on the above deficiency in the amount of Two and 05/100 Dollars ($2.05), which amount was subsequently refunded. That on January 28, 1948, the plaintiff filed with the defendant a Claim for Refund in the amount of Four Thousand Nine Hundred Thirty-One and 13/100 Dollars ($4,931.13), a copy of which Claim is attached to the Complaint marked Exhibit "N"; that on July 20, 1949, the plaintiff received a Notice of Rejection of said Claim, a copy of which is attached to the Complaint marked Exhibit "J."

### VII.

That as of December 31, 1943, the plaintiff had on its ledger accounts a specific account designated "Prepaid Special Bus Revenue," which account reflected the sum of Seven Thousand One Hundred Fifteen Dollars ($7,115); that as of December 31, 1944, this specific account designated "Prepaid Special Bus Revenue" reflected the sum of Twenty-One Thousand Three Hundred Fifty-Seven and 85/100 Dollars ($21,357.85); that as of December 31, 1945, this specific account designated "Prepaid Special Bus Revenue," reflected the sum of Twenty-Two Thousand One Hundred Two and 85/100 Dollars ($22,102.85).

That as of December 31, 1944, the plaintiff had on its ledger accounts, a liability account, which reflected the sum of Four Thousand Two Hundred Eighteen and 75/100 Dollars ($4,218.75), which represented amounts received by the plaintiff for round-trip tickets, commutation tickets, and tickets paid for and not yet presented for passage by regular customers; that as of December 31, 1945, this ledger account reflected the sum of Ten Thousand Three Hundred Eight and 58/100 Dollars ($10,308.58), which represented amounts received by the plaintiff for round-trip tickets, commutation tickets, and tickets paid for and not yet presented for passage by regular customers.

### VIII.

That as to each of the years 1943, 1944 and 1945, the Court finds the following facts to be true:

(a) That the plaintiff is owner and holder of Certificate of Public Convenience and Necessity No. 345, issued by the Washington Public Service Commission, and a Certificate of Public Convenience and Necessity issued by the Interstate Commerce Commission of the United States, authorizing the carriage of passengers and express by motor coach between certain communities in the State of Washington. That plaintiff rendered certain off-line unscheduled service for the purpose of transporting Navy Personnel.

(b) That, under the rules and regulations of the Washington Public Service Commission and the Interstate Commerce Commission, plaintiff is required to sell to its patrons round-trip tickets, commutation tickets and other forms of prepaid transportation.

(c) That with the advent of World War II, there was a tremendous expansion in the region of Bremerton, Tacoma and Pacific Beach, which required the transporting of thousands of Government workers; that this rapid rate of expansion made travel by Government Transportation Requests impossible; that the Navy Department sought to work out some other method of paying for transporting of its personnel and did adopt the contract method of purchasing transportation tickets; that the plaintiff was required to execute contracts for the purchase of tickets by the Navy as a substitute method for the use of travel requests; that numerous contracts were executed between the plaintiff and the Navy Department, and that the same are more particularly set forth in plaintiff's Exhibits

Nos. 2 to 15, inclusive; that these contracts were merely a blanket form of Governmental contract that cover everything— materials and supplies—and contained mimeographed "fill-ins," which were in themselves incomplete; that because the contracts themselves were ambiguous, in so far as these transactions were concerned, parole evidence was admissible to clarify the transactions between the parties.

(d) That during these years, the Navy Department could not determine its requirements for transportation, and did deposit large sums of money in the hands of plaintiff for the purchase of huge blocks of tickets; that upon payment of such large sums by the Navy, a liability account, designated "Prepaid Special Bus Revenue," was set up on the books of the plaintiff to cover such deposits; that when the tickets were actually used, such account was debited and plaintiff's income account credited.

(e) That there was an express understanding between the plaintiff and the Navy that such tickets as were not used "or lifted," would be required to be refunded by the plaintiff upon presentation of them by the Navy; that a history of the operation with the Navy disclosed that refunds had been made to the Navy during these years, and that the same is more particularly set forth in plaintiff's Exhibit No. 26.

(f) That, by tariff regulation of the Washington Public Service Commission and the Interstate Commerce Commission of the United States, plaintiff is required to refund any unused transportation returned to it for refund.

(g) That the plaintiff keeps its books on the accrual method, and reports its ticket revenue on the "lift" basis; that such system of reporting is in accordance with the regulations of the Washington Public Service Commission and the Interstate Commerce Commission of the United States; that the amount so set up by plaintiff for tickets sold becomes a definite liability and is not a reserve, and is subject to actual cash refund or furnishing the required transportation; that at the close of each year, the plaintiff's records reflect as a liability the amount of tickets sold, but not presented as payment for passage.

(h) That the Commissioner's method of reflecting taxpayer's income in the special account, "Prepaid Bus Revenue," did not truly reflect the income of the corporation for the years involved.

(i) That said Navy prepayments were in substance and effect a deposit of funds in the hands of plaintiff by the Navy Department.

(j) That the manner of handling and accepting these large sums of money was for the convenience of the Navy Department, at their special request, and due to the exigencies of the war, and that it was not the general way and manner that plaintiff desired to handle Government transportation.

(k) That before the Navy funds became income to the plaintiff, additional costs had to be incurred by plaintiff, in that special vehicles, special runs, and additional help, other than that regularly used in the operation of business, had to be provided by the plaintiff whenever transportation was ordered by the Navy Department.

(1) That the Commissioner's method of reflecting income as to the prepaid tickets sold to regular patrons, was fairly uniform as to the years involved, and that it further appeared that such uniformity would continue, and that the unusual circumstances applicable to the Navy funds did not apply to the prepayments of the regular patrons for transportation.

IX.

That as to the year 1943, the plaintiff's income was increased by the Commissioner in the amount of Seven Thousand One Hundred Fifteen Dollars ($7,115) in respect to the Navy Prepayments, resulting in an additional excess profits tax assessment and payment by the plaintiff of Five Thousand One Hundred Twenty-Two and 80/100 Dollars ($5,122.80); that as to the year 1944, the plaintiff's income was increased by the Commissioner in the amount of Fourteen Thousand Two Hundred Forty-Two and 85/100 Dollars ($14,242.85), in respect to the Navy Prepayments, resulting in an additional income and excess profits tax assessment and payment by the plaintiff of Ten Thousand Five Hundred Ninety-

two and 90/100 Dollars ($10,592.90) ; that as to the year 1945, the plaintiff's income was increased by the Commissioner in the amount of Seven Hundred Forty-Five Dollars ($745) in respect to the Navy Prepayments, resulting in an additional income and excess profits tax assessment and payment by the plaintiff of Six Hundred Forty-Seven and 36/100 Dollars ($647.36).

### X.

That as to the year 1944, the plaintiff's income was increased by the Commissioner in the amount of Four Thousand Two Hundred Eighteen and 75/100 Dollars ($4,218.-75), in respect to the prepayments made by regular patrons, resulting in an additional income and excess profits tax assessment and payment by the plaintiff of Three Thousand Six Hundred Six and 54/100 Dollars ($3,606.54) ; that as to the year 1945, the plaintiff's income was increased by the Commissioner in the amount of Six Thousand Eighty-Nine and 83/100 Dollars ($6,089.83), in respect to the prepayments made by regular patrons, resulting in an additional income and excess profits tax assessment and payment by the plaintiff of Four Thousand Two Hundred Eighty-Six Dollars ($4,286)

### Conclusions of Law.

From the foregoing facts, the Court draws the following Conclusions of Law:

### I.

That until such time as the tickets issued to the Navy were actually lifted and honored for transportation, the plaintiff had no income.

### II.

That as to the year 1943, the plaintiff's income was overstated by the Commissioner, by way of including the Navy funds into income in the amount of Seven Thousand One Hundred Fifteen Dollars ($7,115) ; that plaintiff is therefore entitled to have and recover judgment against this defendant in the sum of Five Thousand One Hundred Twenty-Two and 80/100 Dollars ($5,122.80), plus interest thereon at the rate as fixed by law;

That as to the year 1944, the plaintiff's income was overstated by the Commissioner, by way of including the Navy funds into income in the amount of Fourteen Thousand Two Hundred Forty-Two and 85/100 Dollars ($14,242.85) ; that plaintiff is therefore entitled to have and recover judgment against this defendant in the sum of Ten Thousand Five Hundred Ninety-Two and 90/100 Dollars ($10,592.90), plus interest thereon at the rate as fixed by law;

That as to the year 1945, the plaintiff's income was overstated by the Commissioner, by way of including the Navy funds into income in the amount of Seven Hundred Forty-Five Dollars ($745) ; that plaintiff is therefore entitled to have and recover judgment against this defendant in the sum of Six Hundred Forty-Seven and 36/100 Dollars ($647.36), plus interest thereon at the rate as fixed by law.

### III.

That as to the balance of relief sought by the plaintiff, in respect to prepayments made by regular patrons for the years 1944 and 1945, the same is hereby denied.